IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABRAHAM SIGURD LEE, | No. 1:25-CV-01839 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| MICHAEL GOURLEY, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

JANUARY 21, 2026

Plaintiff Abraham Sigurd Lee filed the instant *pro se* Section 1983[1] lawsuit, alleging constitutional violations by officials at the State Correctional Institution in Camp Hill, Pennsylvania (SCI Camp Hill). Because Lee fails to state a claim upon which relief may be granted, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant him leave to amend.

**I.    BACKGROUND**

During the events that underlie the instant lawsuit, Lee was incarcerated at SCI Camp Hill. It appears that shortly after filing his complaint, he was released from prison and now resides in Minneapolis, Minnesota.[2]

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  *See* Doc. 25.

The gist of Lee's lawsuit is that SCI Camp Hill officials improperly treated him as a felony sex offender when his underlying criminal convictions did not warrant such treatment. Lee's *pro se* complaint is disjointed and difficult to follow, but he appears to allege that prison officials requested that he undergo a "sex offender evaluation" and DNA collection despite these procedures not being required by any court, his sentencing judgments, or Pennsylvania law.[3] It is unclear from Lee's complaint whether he was forced to undergo the sex offender evaluation or the DNA collection prior to his release from custody.

From the publicly available criminal docket, it appears that in 2016, Lee was charged in the Court of Common Pleas of Montgomery County, Pennsylvania, with simple assault, terroristic threats with intent to terrorize another, unlawful dissemination of an intimate image, and false imprisonment—all first- or second-degree misdemeanor offenses.[4] In March 2017, he pled guilty to these offenses and was sentenced to 18 to 36 months' incarceration and four years' probation.[5]

Lee moved for parole approximately six months later, which motion was granted.[6] However, at some subsequent point, he violated his probation (apparently by making terroristic threats again), and was reincarcerated with a controlling minimum date of May 16, 2024, and a controlling maximum date of

---

[3] *See* Doc. 1 at 1, 2, 3.
[4] *See Commonwealth v. Lee*, No. CP-46-CR-0007653-2016 (Ct. Com. Pl. Montgomery Cnty.).
[5] *See id.*; *see also* Doc. 1 at 14.
[6] *See Lee*, No. CP-46-CR-0007653-2016 (Ct. Com. Pl. Montgomery Cnty.).

November 16, 2025.[7]  It appears that Lee was released from SCI Camp Hill and the Commonwealth of Pennsylvania's custody after reaching his controlling maximum date, after which he returned to Minnesota.[8]

Lee lodged the instant Section 1983 complaint in the United States District Court for the Eastern District of Pennsylvania in September 2025, approximately two months before his release.[9]  The Eastern District then transferred the case to this Court via 28 U.S.C. § 1406(a).[10]  Lee eventually paid the statutorily required initial partial filing fee in December 2025, rendering his case ripe for screening under 28 U.S.C. § 1915A(a).

Lee sues four defendants: SCI Camp Hill Superintendent Michael Gourley, Classification Officer A. Herchelroath, Counselor Mr. Bingham, and Cumberland County, Pennsylvania.[11]  As best as the Court can discern, he appears to be asserting Section 1983 claims invoking the Fourth, Eighth, and Fourteenth Amendments.[12]  It is unclear which Defendant or Defendants are targeted by each constitutional tort claim.  Lee seeks money damages from all Defendants.[13]

---

[7] Doc. 1 at 14.
[8] *See id.*; Doc. 25.
[9] *See generally* Doc. 1.
[10] *See* Doc. 5.
[11] *See* Doc. 1 at 1-2; Doc. 11.  In his initial complaint, Lee named "Columbia County, Pennsylvania," as a defendant, but then moved to amend this defendant to "Cumberland County, Pennsylvania," when he realized that he had identified the wrong county.  *See* Doc. 11.  The Court will grant this motion to amend.
[12] *See* Doc. 1 at 3-4.
[13] *Id.* at 12.  Lee also filed a separate motion seeking injunctive relief, (Doc. 7), but that motion was withdrawn by operation of Local Rule of Court 7.5 when Lee did not timely file a

## II.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[14]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[15]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[16]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[17]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[18]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to

---

supporting brief.  *See* Doc. 27.  This motion also appears to be moot, as Lee is no longer in the Commonwealth's custody.  *See id.* at 2 n.4.
[14]  *See* 28 U.S.C. § 1915A(a).
[15]  *Id.* § 1915A(b)(1).
[16]  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[17]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[18]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[19]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[20] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[21] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[22] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[23] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[24]

Because Lee proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[25]

---

[19] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[20] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[21] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[22] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[23] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[24] *Iqbal*, 556 U.S. at 681.
[25] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

## III. DISCUSSION

Lee appears to assert a Fourth Amendment unlawful search claim, an Eighth Amendment failure-to-protect claim, a Fourteenth Amendment double jeopardy claim, and a Fourteenth Amendment equal protection claim.[26] After careful review, the Court finds that he fails to state a claim upon which relief may be granted. The Court will address Lee's various pleading deficiencies in turn.

### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[27] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[28] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[29] Furthermore, it is

---

[26] Lee references innumerable other constitutional amendments and laws, including but not limited to the Fifth, Sixth, Eleventh, Thirteenth, and Fifteenth Amendments, as well as Articles "1, 2, 3, 4, 14, [and] 16" of the Convention Against Torture (CAT), and the "Kyoto Protocol." *See* Doc. 1 at 3, 4, 9. The Court will summarily dismiss these claims because they are completely undeveloped and represent only conclusions of law. *See Connelly*, 809 F.3d at 787.

[27] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

[28] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

[29] *Id.* (quoting *Rode*, 845 F.2d at 1207).

equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[30]

Lee asserts some or all Section 1983 claims against Superintendent Gourley. He does not, however, plausibly allege how Superintendent Gourley was personally involved in the alleged violation of his federal rights. Lee contends that Superintendent Gourley is the head supervisor at SCI Camp Hill and is thus "accountable for the actions of the SCI Camp Hill employees."[31] This assertion is a quintessential example of *respondeat superior* (that is, vicarious liability for Superintendent Gourley based on the conduct of others), which does not apply to Section 1983 claims.

Additionally, Lee fails to allege personal involvement for Counselor Bingham. It appears that on September 9, 2025, Lee wrote a "request to staff member" (form DC-135A) to Counselor Bingham, complaining that Officer Herchelroath "falsely requested" a sex offender evaluation.[32] Counselor Bingham responded to Lee, providing his best statutory explanation as to why a sex offender

---

[30] *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").
[31] Doc. 1 at 2.
[32] *Id.* at 6.

evaluation and DNA sample were being requested.[33] This simple correspondence does not implicate personal involvement in a constitutional violation, as Lee does not allege that Counselor Bingham took any action that would have potentially violated Lee's federal rights.

To plausibly plead a Section 1983 claim, Lee must specify each Defendant's personal involvement in the alleged constitutional misconduct in order to state a claim against them. He does not do so for Superintendent Gourley or Counselor Bingham. Accordingly, the Court must dismiss the Section 1983 claim(s) against these Defendants under 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B. Claim(s) Against Cumberland County

As noted above, Lee names Cumberland County, Pennsylvania, as a defendant in this action. He does not, however, explain how Cumberland County is or could be involved in this lawsuit. Although situated in Cumberland County, SCI Camp Hill is a *state* correctional institution controlled and operated by a *state* agency, the Pennsylvania Department of Corrections.

It is possible that Lee may be attempting to assert a Section 1983 claim against Cumberland County for an unconstitutional policy or practice.[34] If so, he faces two significant problems. First, Lee has not plausibly alleged how Cumberland County has anything to do with the management, operation, or

---

[33] *See id.*
[34] *See* Doc. 1 at 2; *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).

8

policies of SCI Camp Hill, a state correctional institution. Second, he has not identified a prison policy that is violative of the constitution. Lee does not, for example, allege that SCI Camp Hill has a policy of forcing inmates to undergo unwarranted sex offender evaluations and DNA collection. In fact, he does not plead *any* SCI Camp Hill policy or practice in his complaint—he merely alleges what happened to him. Accordingly, the Section 1983 claim or claims against Cumberland County will be dismissed for failure to state a claim.

### C.  Official Capacity Claims

Lee sues the SCI Camp Hill officers in their individual and official capacities.[35] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[36] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[37] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its

---

35  *See* Doc. 1 at 11, 12.
36  U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
37  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

9

immunity with respect to claims brought under Section 1983.[38] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[39]

In his complaint, Lee seeks only money damages. To the extent those damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity and will be dismissed as legally frivolous. Additionally, although Lee separately moved for injunctive relief, that motion was withdrawn by operation of the Local Rules of Court. Even if it had not been withdrawn, Lee's request for prospective injunctive relief is moot in light of his release from the Commonwealth's custody.[40]

### D. Fourth Amendment Claim

The Fourth Amendment to the United States Constitution, in pertinent part, protects against "unreasonable searches and seizures."[41] However, in the prison context, it is well settled that "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and

---

[38] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[39] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

[40] *See Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993) (finding moot inmate's claim for injunctive relief regarding legal access in prison's maximum security unit, as inmate had been released from that unit well before district court ruled on the claim).

[41] U.S. CONST. amend IV.

seizures] does not apply in prison cells[.]"[42]  Rather, the Fourth Amendment's application to prison settings has been narrowly constrained to issues regarding bodily integrity.[43]

Lee alleges that the forced collection of a DNA sample without a proper legal basis is a violation of his Fourth Amendment rights.  It is doubtful that a DNA sample (normally obtained through a cheek swab) would transgress beyond the "reasonable intrusions necessitated in the prison setting" that the Third Circuit has noted are constitutionally permissible.[44]

Assuming for the sake of argument that the intrusion is unreasonable, Lee's claim falls short because he does not allege in his complaint that he was forced to provide a DNA sample, only that Officer Herchelroath was requesting one.  And to the extent that Lee is seeking preliminary injunctive relief to enjoin future DNA collection, that claim is moot because he has been released from SCI Camp Hill and the Commonwealth's custody.  Accordingly, Lee's Fourth Amendment claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

---

[42] *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."); *see also Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (nonprecedential) (holding that seizure of legal materials did not state a cognizable Fourth Amendment claim) (citing *Hudson*, 468 U.S. at 536).

[43] *See Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016) (distinguishing *Hudson*'s holding from Fourth Amendment claims regarding invasive searches of prisoners' bodies).

[44] *See id.* at 325.

### E. Eighth Amendment Failure to Protect Claim

Lee asserts that prison officials inappropriately labeling him a "sex offender" by forcing him to obtain an unwarranted sex offender evaluation could create a significant risk of bodily harm from other prisoners.[45] Such a risk has long been acknowledged by courts within and outside this circuit.[46]

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."[47] Prison officials, therefore, have "a duty to protect prisoners from violence at the hands of other prisoners."[48] However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[49]

To plead an Eighth Amendment failure-to-protect claim against a prison official, the inmate must plausibly allege that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[50] In this

---

[45] *See* Doc. 1 at 7, 12.
[46] *See Dongarra v. Smith*, 27 F.4th 174, 179 (3d Cir. 2022); *Renchenski v. Williams*, 622 F.3d 315, 326-27 (3d Cir. 2010) (collecting cases).
[47] *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).
[48] *Id.* (alteration in original) (quoting *Farmer*, 511 U.S. at 833).
[49] *Farmer*, 511 U.S. at 834.
[50] *Bistrian*, 696 F.3d at 367.

context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[51] Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[52]

Lee's Eighth Amendment claim falls short for reasons similar to his Fourth Amendment claim. That is, he does not allege that he was harmed by being inappropriately mislabeled as a sex offender while incarcerated at SCI Camp Hill. Of course, prisoners do not need to wait until harm has come to them to file a Section 1983 failure-to-protect claim; rather, they may seek prospective injunctive relief to avoid the harm that could occur from the substantial risk of injury they are facing.[53] The problem for Lee, once again, is that he has been released from SCI Camp Hill and from the state's custody. Thus, any claim for prospective injunctive relief seeking protection from potential harm caused by being mislabeled as a sex offender is moot. Accordingly, Lee's complaint, as it currently stands, does not plausibly allege an Eighth Amendment failure-to-protect claim. This claim, too, will be dismissed without prejudice pursuant to Section 1915A(b)(1).

---

[51] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).
[52] *Id.* (quoting *Farmer*, 511 U.S. at 842).
[53] *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event."); *Dongarra*, 27 F.4th at 180.

### F.     Fourteenth Amendment Double Jeopardy Claim

Lee contends that SCI Camp Hill officials violated the constitutional protection against double jeopardy[54] by "imposing another form of punishment to an expired sentence" for his conviction for unlawful dissemination of an intimate image. Lee's double jeopardy claim is fatally flawed because the alleged "punishment" he identifies—being required to undergo a sex offender evaluation and DNA collection—does not qualify as punishment for double jeopardy purposes. The two requirements alleged by Lee do not have a punitive or retributive purpose and do not have an effect or "sting" so harsh as to constitute punishment.[55] As such, Lee's allegations do not plausibly state a double jeopardy claim.[56]

### G.     Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[57] To state a Fourteenth Amendment equal protection claim, a

---

[54] The Fifth Amendment's guarantee against double jeopardy is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 787 (1969).

[55] *See E.B. v. Verniero*, 119 F.3d 1077, 1093 (3d Cir. 1997) (explaining factors considered when determining whether a measure is "punishment" for double jeopardy purposes).

[56] Additionally, Lee has not alleged that he underwent a sex offender evaluation or DNA collection, thus providing another reason why his double jeopardy claim is deficiently pled. Like his Fourth and Eighth Amendment claims, although he could seek prospective injunctive relief if he were still incarcerated and had yet to be evaluated or swabbed, Lee has been released from prison and therefore his equitable claims are moot.

[57] U.S. CONST. amend. XIV, § 1.

prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]"[58] An equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently than others who are similarly situated "and there is no rational basis for the difference in treatment."[59]

    Lee's complaint fails to plausibly plead an equal protection violation. He does not allege that his membership in a protected class was the basis for the alleged discrimination. Rather, he states that "[t]he discrimination at issue *might be* due to 'suspect classifications,'" like "ethnicity" or an unspecified "immutable trait."[60] This type of vague and equivocal pleading does not plausibly allege discrimination based on membership in a protected class.

    To the extent that Lee may be attempting to assert a "class of one" equal protection claim, he has not done that either. Lee has failed to identify others who are similarly situated to him and who received intentionally different treatment by SCI Camp Hill officials, and thus he has failed to plausibly plead a class-of-one

---

[58] *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016).
[59] *Phillips*, 515 F.3d at 243 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).
[60] *See* Doc. 1 at 5 (emphasis added).

equal protection claim against any Defendant.[61] So Lee's Fourteenth Amendment equal protection claim must be dismissed under Section 1915A(b)(1) as well.

### H. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[62] Lee will be granted limited leave to amend in the event that he can plead facts that would plausibly state a Section 1983 claim.

However, Lee's Fourteenth Amendment double jeopardy claim will be dismissed with prejudice, as granting leave to amend this claim would be futile. The allegedly punitive actions (being required to undergo a sex offender evaluation and DNA collection) do not constitute "punishment" for double jeopardy purposes. Additionally, all official capacity claims will be dismissed with prejudice under Section 1915A(b)(1) as legally frivolous. That is because any official capacity claim for money damages is barred by sovereign immunity and any official capacity claim seeking prospective injunctive relief is moot.

---

[61] *See Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (nonprecedential) (finding that prisoner failed to state an equal protection claim because he did not "allege facts showing that he was similarly situated to the inmates who received [better medical treatment], or that there was no rational basis for his different treatment.").

[62] *Grayson*, 293 F.3d at 114.

If Lee chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his Section 1983 claim or claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Lee must leave one-inch margins on all four sides of his pleading.[63] Any exhibits or documents he wishes to present should be attached to his amended complaint. Lee *may not* include claims that have been dismissed with prejudice, and he must address the deficiencies set forth in this Memorandum. He must name proper defendants and specify the offending actions taken by a particular defendant. He must also sign the amended complaint and indicate the nature of the relief sought.

If Lee does not timely file an amended complaint, dismissal of any Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

## IV.   CONCLUSION

Based on the foregoing, the Court will dismiss Lee's complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be

---

[63]   *See* LOCAL RULE OF COURT 5.1.

granted. Lee may file an amended complaint in accordance with this Memorandum. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge